*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CLAUDELL TURNER,

Defendant-Appellant.

FOR PUBLICATION
August 18, 2022
9:00 a.m.

No. 357699
Oakland Circuit Court
LC No. 2021-276333-FH

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PATEL, J.

Defendant Claudell Turner was pulled over by two Oakland County Sheriff deputies because the vehicle that he was driving matched the description provided by an anonymous source who claimed that he saw a person named "Michael Sullivan" with a black pistol while driving a gray Jeep Grand Cherokee. Six seconds after one of the deputies asked Turner for his identification, Turner was ordered out of the vehicle, handcuffed, and searched without any opportunity to produce his identification that was in plain view on the center console of the vehicle. Turner argues that the trial court erred in denying his motion to suppress the evidence seized because there was no probable cause for his arrest and the search was unconstitutional.

The Fourth Amendment protects individuals from being subjected to unreasonable searches and seizures. The patdown search of Turner did not reveal any weapons that would justify the search of his pockets, pants, and underwear. And there was no probable cause to arrest Turner based on the statements from an anonymous source who provided the name of a different person. We conclude that the search was unconstitutional and the evidence seized must be suppressed. We reverse the trial court's order denying Turner's motion to suppress.

## I. FACTUAL BACKGROUND

On December 4, 2020, an anonymous person reported to Oakland County Sheriff Deputy Kevin Myers and Detective Daniel Hedrick that he saw a person named "Michael Sullivan" with a black pistol while driving a newer, gray Jeep Grand Cherokee on the south side of Pontiac, Michigan. Sullivan was described as African-American male in his 30s with long dreadlocks. The anonymous tipster reported that Sullivan pulled out the black pistol "and was showing it while he

was in the vehicle." The anonymous tipster did not report that Sullivan threatened him with the pistol. Neither Myers nor Hedrick had met the anonymous source before this encounter. Myers and Hedrick searched for Sullivan on the Law Enforcement Information Network (LEIN). Myers maintained that the LEIN inquiry confirmed the anonymous source's description of Sullivan and showed that Sullivan had a suspended driver's license and a warrant for his arrest related to a traffic offense.

Less than two hours later, Myers observed a newer, gray Jeep Grand Cherokee cross an intersection on the south side of Pontiac. Although Myers admitted that he was more than a full city block from the intersection at the time that he first observed the Jeep, he maintained that the Jeep "appeared to be going at a high rate of speed." Myers initially claimed that he could see that the driver of the Jeep matched Sullivan's description when the Jeep crossed the intersection. But Myers admitted on cross-examination that he was too far from the intersection to identify the driver of the Jeep.[1] Myers turned at the intersection, caught up to the Jeep, and initiated a traffic stop.[2] The patrol vehicle's dashboard video camera recorder captured the events.

As Myers and Hedrick approached Turner's vehicle, Turner had his hands in the air. Myers ordered Turner to roll down his window. Turner complied with the command. Myers asked Turner if he had any identification. Approximately six seconds later, Myers opened the driver's side door and ordered Turner out of the vehicle before he could produce his identification. Turner stepped out of the vehicle. Myers started handcuffing Turner as he was exiting the Jeep. Hedrick requested consent to search Turner's vehicle, but Turner refused. In response to a series of questions by Hedrick, Turner provided his full name, confirmed that he had a valid driver's license, stated that his license was inside of the vehicle in the center console, and confirmed that the vehicle was a rental.[3] While Turner was responding to Hedrick's questions, Myers performed a patdown search, reached into Turner's left pocket, and withdrew some currency. Myers did not find any weapons in Turner's pockets. Turner offered to retrieve his identification from the vehicle, but the officers refused to allow him.

Rather than retrieve Turner's identification from the vehicle to confirm his identity, the officers took Turner behind their patrol vehicle and searched him further.[4] Myers felt "some type of hard like plastic" from the outside of Turner's pants with his right hand. With his left hand, Myers pulled the elastic waistband of Turner's pants away from Turner's body, looked inside of

---

[1] It is undisputed that Turner is an African-American male in his 30s and, at the time of the incident, he had long, braided hair.

[2] During the preliminary exam, Myers maintained that the reason he initiated the traffic stop was to investigate the firearm allegation. At the evidentiary hearing, Myers initially testified that he initiated the traffic stop based on the civil infraction for speeding. But on cross-examination, Myers maintained that the reason he stopped the Jeep was to investigate the firearm allegation.

[3] It is undisputed that Turner had a valid driver's license and did not have any warrants for his arrest.

[4] This portion of the search is not within the camera's view.

Turner's pants, and observed a black digital scale. While Myers and Hedrick were searching Turner, a third officer, Detective Brian Wilson, observed Turner's identification on top of the center console and retrieved it. Wilson approached the two officers with the identification as Myers was removing the scale from Turner's pants. Hedrick continued to search Turner. Wilson grabbed Turner's pants and underwear from the outside, shook them, and a clear, plastic baggie fell out of the bottom of his pant leg.[5]

Turner was bound over for trial on one count of possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), and one count of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*). Turner moved to suppress the evidence that was seized during the stop, arguing that the search was unconstitutional. The trial court denied the motion to suppress. The trial court concluded that the patdown search was reasonable and did not exceed the scope of *Terry v Ohio*, 392 US 1; 88 S Ct 1868, 20 L Ed 2d 889 (1968) because Myers "observed a bulge in Defendant's pants and testified that he did not know if the object in the Defendant's pants was a weapon."

Turner filed an application for leave to appeal, which this Court denied.[6] Thereafter, Turner filed an application for leave to appeal with our Supreme Court. In lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration as on leave granted.[7]

## II. STANDARD OF REVIEW

We review a trial court's ultimate decision on a motion to suppress de novo, but we review any factual findings for clear error. *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013). A finding is clearly erroneous if, after an examination of the entire record,[8] the reviewing court is left with a definite and firm conviction that the trial court made a mistake. *People v Givans,* 227 Mich App 113, 119; 575 NW2d 84 (1997). Underlying questions of law are reviewed de novo. *People v Daoud,* 462 Mich 621, 629-630; 614 NW2d 152 (2000).

---

[5] The baggie contained two smaller baggies – one containing a substance that tested positive for cocaine and one containing a substance that tested positive for heroin. While out of view of the camera, Hedrick can be heard on the audio asking Myers, "Was the scale in there too?" Myers responded, "Oh yeah. I dug that out of his boxers." Shortly thereafter, the dashcam video depicts both officers turning off their microphones before searching Turner's vehicle.

[6] *People v Turner*, unpublished order of the Court of Appeals, entered August 18, 2021 (Docket No. 357699).

[7] *People v Turner*, 969 NW2d 64 (Mich, 2022).

[8] In reviewing a motion to suppress evidence, a trial court may rely on testimony from the preliminary examination if the parties stipulate. See *People v Kaufman*, 457 Mich 266, 275–276; 577 NW2d 466 (1998). In this case, both parties referenced the preliminary examination testimony in their trial court briefs and the trial court was provided with a full copy of the preliminary examination transcript with the briefing on the motion to suppress. Therefore, our review includes the preliminary examination testimony.

III. ANALYSIS

Turner argues that the officers' search was unconstitutional because the patdown of his outer clothing did not reveal a weapon and there was no probable cause to arrest him based on the statements from an anonymous source who provided the name of a different person. We agree.

A person's right to be secure against unreasonable searches and seizures is guaranteed by both the United States Constitution and the Michigan Constitution. US Const, Am IV; Const 1963, art 1, § 11; *People v Pagano,* 507 Mich 26, 31-32; 967 NW2d 590 (2021). A seizure occurs "when, in view of all the circumstances, a reasonable person would conclude that he or she was not free to leave." *People v Kavanaugh*, 320 Mich App 293, 300; 907 NW2d 845 (2017). "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v North Carolina*, 574 US 54, 60; 135 S Ct 530; 190 L Ed 2d 475 (2014) (quotation marks and citations omitted). It is presumed that a warrantless search or seizure is unreasonable under the Fourth Amendment unless one of the few specific exceptions are applicable. *Illinois v Gates,* 462 US 213, 236; 103 S Ct 2317; 76 L Ed 2d 527 (1983); *People v Hughes*, 506 Mich 512, 524-525; 958 NW2d 98 (2020); *People v Reed*, 393 Mich 342, 362; 224 NW2d 867 (1975).

One such exception is a *Terry* investigatory stop. *Johnson v VanderKooi*, __ Mich __ , __; __ NW2d __ (2022) (Docket 160958); slip op at 10. A *Terry* stop allows an officer to conduct a brief, warrantless seizure when the officer has at least a reasonable suspicion of criminal activity based on articulable facts. *Terry*, 392 US 20-27. A *Terry* stop can be justified by an anonymous tip if the tip is sufficiently corroborated. *Florida v JL*, 529 US 266, 270; 120 S Ct 1375; 146 L Ed 2d 254 (2000); *Pagano*, 507 Mich at 33. But "*Terry* stops are limited in both scope and duration." *Johnson,* slip op at 10. "The scope of the detention must be carefully tailored to its underlying justification." *Florida v Royer*, 460 US 491, 500; 103 S Ct 1319; 75 L Ed 2d 229 (1983). During a *Terry* stop, an officer may "make reasonable inquiries aimed at confirming or dispelling his suspicions." *Minnesota v Dickerson*, 508 US 366, 373; 113 S Ct 2130; 124 L Ed 334 (1993) (quotation marks and citations omitted).

If an officer has a reasonable suspicion that a person is armed and dangerous, the officer may conduct a limited patdown search for weapons during a *Terry* stop. *Terry*, 392 US at 24; *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). But "*Terry* strictly limits the permissible scope of a patdown search to that reasonably designed to discover guns, knives, clubs, or other hidden instruments that could be used to assault an officer." *Champion*, 452 Mich at 99. "Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons." *Ybarra v Illinois*, 444 US 85, 93-94; 100 S Ct 338; 62 L Ed 2d 238 (1979). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. . . ." *Adams v Williams,* 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972). *Terry* does not authorize an officer to conduct "a general exploratory search for whatever evidence of criminal activity he might find." *Terry,* 392 US at 30.

A. PLAIN FEEL

Turner does not challenge the initial traffic stop. Turner also concedes that Myers had the authority to order him out of the vehicle[9] and conduct a limited *Terry* patdown search. However, Turner argues that the deputy violated the dictates of *Terry* by intruding into Turner's clothing and seizing the objects found therein. We agree.

The "plain feel" exception to the warrant requirement authorizes the warrantless seizure of an object felt during a *Terry* patdown search, but only if the item's identity is immediately apparent. *Dickerson*, 508 US at 375-376; C*hampion*, 452 Mich at 105-106. Utilizing the plain view doctrine as guidance, the United States Supreme Court explained the standard for the plain feel doctrine:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose *contour or mass makes its identity immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
>
> * * * *
>
> Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures. . . . The seizure of an item whose identity is already known occasions no further invasion of privacy. [*Dickerson*, 508 US at 375-376, 377 (emphasis added).]

An officer must develop "probable cause to believe that the item felt is contraband before going beyond the legitimate scope of the patdown search." *Champion*, 452 Mich at 105-106. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson*, 508 US at 373.

In *Dickerson,* the officer detected a small lump in the defendant's jacket pocket while performing a *Terry* frisk for weapons. *Dickerson*, 508 US at 369. However, it was not immediately apparent to the officer that the object was contraband. *Id.* It was not until the officer manipulated the object with his fingers that he formed an opinion that the object "felt to be a lump of crack cocaine in cellophane." *Id.* The officer did not make any claim that he suspected the object was a weapon. *Id*. at 378. The officer then reached into the defendant's pocket and retrieved a small plastic bag containing crack cocaine. *Id.* at 369. The Court held that "the officer's continued exploration of [the defendant's] pocket after having concluded that it contained no weapon"

---

[9] Myers testified that Turner reached down between his right leg and the center console of the vehicle twice, which is why he ordered him out of the vehicle. Turner concedes that Myers had the authority to order Turner to step out of the car pursuant to *Pennsylvania v Mimms*, 434 US 106; 98 S Ct 330; 54 L Ed 2d 331 (1977).

exceeded the sole justification of a *Terry* patdown to protect the officer and others nearby. *Id.* at 378. Accordingly, the Court held that the seizure of the cocaine was unconstitutional. *Id.* at 379.

Michigan has adopted *Dickerson*'s plain feel exception to the warrant requirement. *Champion*, 452 Mich at 105. During a patdown search of the defendant in *Champion*, the officer "felt what he immediately identified as a pill bottle tucked inside [the defendant]'s sweatpants, between his legs in the groin region." *Id.* at 95. Unlike the officer in *Dickerson*, the officer in *Champion* "did not further manipulate or grope the object in order to determine its incriminating character." *Id.* at 110. The officer testified that, based on his law enforcement experience, he knew that controlled substances were often carried in pill bottles. *Id.* 95. Based on this knowledge, the officer believed that the pill bottle contained controlled substances, removed it, and found that it contained crack cocaine. *Id.* The defendant was placed under arrest and, during the search incident to the arrest, they seized currency and additional cocaine. *Id.* at 95-96. Under the totality of the circumstances,[10] the *Champion* Court concluded that the officer had probable cause to believe that the pill bottle contained contraband. *Id.* at 111-112. Because the plain feel exception is dependent on the totality of the circumstances in each given case, the *Champion* court cautioned that its holding was limited to the facts before it. *Id.* at 112-113.

In this case, the officers conducted a *Terry* stop to determine whether Turner was Michael Sullivan, who was believed to be armed. Thus, the scope of the detention and search was limited to verifying Turner's identity and whether he was armed. See *Terry*, 392 U.S. at 18-19, 27; *Royer*, 460 US at 500. The officers had no other information that would have permitted them to exceed the permissible scope of the *Terry* stop. Their "reasonable suspicion" was derived from an anonymous tipster that they had never met before. And the only information that the officers had about "Michael Sullivan" was his general physical description, the type of vehicle he was driving, that his driver's license was suspended, that he had a warrant for a traffic offense, and that he allegedly had a black pistol while driving a few hours earlier. The officers had never encountered Turner before the traffic stop and could not articulate any reasonable suspicion of ongoing criminal activity other than the anonymous source's allegations against Michael Sullivan.

During the evidentiary hearing, Myers testified that, as Turner stepped out of his vehicle he "noticed a foreign object that didn't look right in the crotch area of his sweatpants." Myers "thought it was a small caliber pistol like the handle of it, or the like the butt of the pistol itself or handgun" so he secured Turner in handcuffs. Myers testified, "when I started patting him down to

---

[10] The *Champion* Court relied on the following facts to support its conclusion:

> (1) the defendant got out of his car and walked away upon seeing the patrol car and uniformed officers, (2) [the officer] recognized defendant and knew of his previous drug and weapons convictions, (3) the officers were in a high drug crime area, (4) the defendant had his hands tucked inside the front of his sweatpants while walking away from the officers and refused to take his hands out of his sweatpants after being repeatedly asked to do so, and (5) [the officer], having had twenty years experience as a police officer, was aware that contraband, and in particular controlled substances, were often carried in the type of pill bottle that he felt on defendant's person. [*Champion*, 452 Mich at 111-112.]

see what the foreign object was that's when I realized it was . . . some type of hard plastic . . . from outside his pants." The video reflects that, shortly after Myers started the *Terry* patdown, he reached into the left pocket of Turner's pants and withdrew currency. Myers candidly admitted at the evidentiary hearing that he had no idea what was in Turner's left pocket before he withdrew the currency. Myers attempted to clarify his actions:

> Q [*Prosecutor*].        So, when you recovered the money, what were you attempting to . . . recover?
>
> * * *
>
> A [*Myers*].        [I] wanted to see what that bulge was, that bulge on the right side there.
>
> * * * *
>
> Q [*Defense Counsel*]. Are you saying that the bulge you saw when he was getting out of the vehicle was the money?
>
> A.        The first time, yes.

After leading Turner off camera, Myers continued to search Turner. At the preliminary exam, Myers described the search off camera as follows: "As I was searching the outer part of his pants, I could feel the—some type of hard like plastic. And with my right hand, I was—I felt over it and then with my left hand I pulled his waistband out from his waist and that's where I observed a black digital scale." But Myers did not testify that he thought the hard plastic was a gun or other type of weapon after he felt it. He simply did not know what it was. He was only able to identify the object after he pulled open the waistband of Turner's pants and looked inside his underwear.

Under the plain feel exception articulated by *Dickerson* and adopted by *Champion*, an officer may seize an object from an individual only "if the officer develops probable cause to believe that the item felt is contraband *before* going beyond the legitimate scope of the patdown search." *Champion,* 452 Mich at 105-106 (emphasis added). We conclude that, under the totality of the circumstances, Myers did not have probable cause to believe that either of the objects that he felt were weapons. Myers' general exploration of the interior of Turner's pants exceeded the scope of the *Terry* patdown. *Dickerson*, 508 US at 378.

Likewise, Wilson did not have probable cause to open Turner's pants and underwear and shake them in order to unlodge any objects that may be contained therein. Wilson did not articulate that he felt a weapon or any other object whose contour or mass made its identity immediately apparent. *Terry* does not authorize an officer to conduct "a general exploratory search for whatever evidence of criminal activity he might find." *Terry,* 392 US at 30. A limited *Terry* patdown is not intended to be used as a tool to try to discover evidence of crime. *Adams,* 407 US at 146.

## B. SEARCH INCIDENT TO ARREST

Turner further argues that this search could not have been incident to arrest because there was no probable cause to arrest Turner. We agree.

"A search incident to an arrest is an exception to the warrant requirement, and may occur whenever there is probable cause to arrest." *People v Nguyen*, 305 Mich App 740, 756; 854 NW2d 223 (2014). "The touchstone of the Fourth Amendment is reasonableness." *People v Hammerlund*, 504 Mich 442, 453; 939 NW2d 129 (2019). Reasonableness dictates that "an arrest must be justified by probable cause." *Id.* "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Champion*, 452 Mich at 115.

### 1. INFORMATION FROM ANONYMOUS TIPSTER

"Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *JL,* 529 US at 270 (quotation marks and citations omitted). "An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse." *Id.* at 272. But this information "does not show that the tipster has knowledge of concealed criminal activity." *Id*. To provide an officer with reasonable suspicion, an anonymous tip must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Id.* at 271.

In *JL*, an anonymous caller reported to the police that a young African-American male wearing a plaid shirt at a particular bus stop was carrying a gun. *Id.* at 268. Shortly thereafter, two officers arrived at the bus stop and observed three African-American males. *Id.* One of the men, JL, was wearing a plaid shirt. *Id.* JL did not make any threatening moves and the officers did not see a firearm. *Id.* Other than the bare information provided by the anonymous caller, the officers had no reason to suspect any of the three men of illegal conduct. *Id.* The officers conducted a *Terry* stop, frisked JL and seized a gun from his pocket. *Id.* Because the officers only had "the bare report of an unknown, unaccountable informant" who did not provide "any basis for believing he had inside information about JL," the Supreme Court concluded that the anonymous tip lacked indicia of reliability and did not justify the *Terry* stop and frisk. *Id*. at 271, 274.

Similarly, in this case, the only information that the anonymous source provided about "Michael Sullivan" was his general physical description, the type of vehicle he was driving, and that he allegedly had a black pistol while driving a few hours earlier. The officers had never encountered Turner before the traffic stop and could not articulate any reasonable suspicion of ongoing criminal activity by Turner. Indeed, the officers looked up Sullivan's information in LIEN and obtained a photograph of Sullivan that matched the description provided by the anonymous tipster. While that corroboration arguably could have provided reasonable suspicion to make a

brief, investigatory *Terry* stop,[11] reasonable suspicion does not equate to probable cause. *Champion*, 452 Mich at 115. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.*

The officers ordered Turner out of the vehicle and cuffed him without giving him a reasonable opportunity to present his identification. After Turner was seized, he provided the officers with his full legal name, told the officers that he had a valid driver's license, and directed the officers to the location of his identification inside the vehicle (which Wilson testified was in plain view on the center console when he ultimately retrieved it). Turner provided all of this information to the officers *before* they conducted a general exploratory search in his pockets and underwear, which was beyond the limits of *Terry*. The officers did not even make a cursory effort to verify Turner's identity before searching him. While the Fourth Amendment allows some mistakes of fact, the limit is that "the mistakes must be those of reasonable men." *Brinegar v United States*, 338 US 160, 176; 69 S Ct 1302; 93 L Ed 1879 (1949). Under the totality of the circumstances, we conclude that the officers did not have probable cause to arrest Turner based on the anonymous tip.[12]

---

[11] Turner concedes this point, so we will not analyze it further.

[12] The prosecution contends that, since Sullivan had an outstanding traffic warrant, and the officers had probable cause to believe that Turner was Sullivan based on the information provided by an anonymous tipster, the officers were authorized to arrest Turner on Sullivan's traffic warrant and conduct a search incident to that arrest. Although the prosecution uses "probable cause" and "reasonably believed" interchangeably in its argument, we note that the applicable standard is whether the officers had a probable cause to arrest Sullivan and a reasonable, good faith belief that Turner was Sullivan when they arrested Turner. See *Hill v California*, 401 US 797, 802; 91 S Ct 1106; 28 L Ed 2d 484 (1971) (evidence seized during a search of the defendant's apartment following the arrest of a guest in the defendant's apartment was admissible against the defendant because the officers had probable cause to arrest the defendant and had a reasonable, good faith belief that the guest was in fact the defendant). First, we note that the prosecution did not raise this argument below, in response to the application for leave to appeal to this Court, or in response to the application for leave to appeal to the Supreme Court. In fact, the prosecution argued to the trial court that Turner was *not* arrested based on the anonymous tip or pursuant to a warrant. Instead, the prosecution took the position that Turner was arrested, *without a warrant*, because the *Terry* patdown search revealed that he possessed cocaine and heroin. Moreover, the dashcam video reflects that Deputy Myers specifically told Turner that he was *not* under arrest and was simply being detained to confirm his identity. Also, Deputy Myers testified at both the preliminary examination and the evidentiary hearing that Turner was merely being detained to investigate the firearm allegation. There is no support for the prosecution's argument that the search of Turner was pursuant to his arrest on Sullivan's traffic warrant. And we conclude that, under the totality of the circumstances, the officers did not have a reasonable, good faith belief that Turner was Sullivan when they arrested Turner for charges unrelated to Sullivan's warrant.

## 2. RESIDUE ON THE SCALE

Turner also argues that the search could not have been incident to his arrest for possession of narcotics because there was no probable cause to arrest him before the search. We agree.

A search cannot be justified as being incident to an arrest if probable cause for the contemporaneous arrest was provided by the fruits of that search. *Smith v Ohio*, 494 US 541, 543; 110 S Ct 1288, 108 L Ed 2d 464 (1990). The prosecution argued to the trial court that Turner was arrested because he committed a felony in the officers' presence—possession of cocaine and heroin. But, absent the unconstitutional search, the officers did not have probable cause to arrest Turner for drug possession. Given that the officers did not have probable cause to arrest Turner, they would not have been justified in conducting a search incident to a lawful arrest.

## IV. CONCLUSION

The officers' search of Turner exceeded the scope of *Terry* and was unconstitutional. Further, because the officers did not have probable cause to arrest Turner, the search could not be justified as incident to an arrest. The exclusionary rule precludes admission of evidence obtained during an unconstitutional search. *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003). Accordingly, the trial court erred in denying Turner's motion to suppress the evidence obtained as a result of the search.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Douglas B. Shapiro